## RALPH WELLS v. TERRITORY OF OKLAHOMA.

(Filed September 3, 1904.)

1. GRAND JURY—Selection. The provisions of the statutes in regard to the mode of obtaining jurors are directory, and a substantial compliance with the requirements of the law is sufficient. The court will not reverse the ruling of the district court overruling a motion to set aside an indictment on the grounds that the grand jury were not chosen, selected and drawn according to the provisions of the statute, and overruling an objection to the manner in which the list of persons from which the panel was selected, was made up, when such objections are purely technical, and do not affect the substantial rights of the parties, and where it does not appear that any material right has been lost thereby. (Sharp v. U. S., 76 Pac. 177, 13 Okla. 522.)

2. HOMICIDE—Evidence—Expert Testimony. Where a witness, who has qualified as a medical expert, as coroner. had made a careful examination of the body of the deceased, and the surroundings, shortly after the homicide, and after having described the wound, the points of entrance and exit, and direction of the bullet through the body, and all of the surrounding facts and circumstances in detail, was permitted to give his opin-

ion as to the position of the deceased at the time that the wound was inflicted; and where the defendant admits the killing, and there is no issue on which the testimony could operate against him, **Held,** If error, was harmless, and would afford no ground for reversal.

3. **SAME—Evidence—Non-Expert Testimony.** It is not error to permit a witness who is not shown to be an expert, to state facts with reference to an examination made by him of the body and of the wound, where such facts are not such as require the opinion of an expert, but only such as any person of ordinary intelligence could testify to from examination and observation.

4. **CONSPIRACY—Evidence—What Admissible.** Where evidence has been offered tending to show a conspiracy, the acts and conduct of any one or more of those shown to have been engaged in pursuance or execution of a common design and purpose, are admissible in evidence in the trial against either of the parties connected with the conspiracy. And it is not error for the trial court to first permit evidence of the acts and transactions of the alleged conspirators upon the assurance by the county attorney that such evidence will be made competent by proof of a conspiracy later.

5. **SAME—Slight Evidence Sufficient.** Slight evidence of collusion is all that is required.

6. **EVIDENCE—Harmless Error.** Where testimony of a witness is erroneously admitted, and it is clear that if such testimony had any weight with the jury, it must of necessity have been beneficial to the defendant, such error would be no cause for reversal.

7. **SAME—Homicide—Motive—How Proven.** Ill treatment and previous assaults are admissible to prove motive in cases of homicide.

8. **SAME—Harmless Error.** Where a witness was not permitted to answer a question, the form of which the court thought objectionable, and was permitted to answer the question when in proper form, this could in no way prejudice the defendant, for even though the court erred in the first instance, such error was rendered harmless.

9. **CRIMINAL LAW—Misconduct of Prosecuting Counsel—No Ground For Reversal, When.** A case will not be reversed on the ground of alleged misconduct of counsel for the Territory unless, in the light of all the facts as disclosed by the record, this court can say that the prosecuting officer was not only guilty of misconduct, but that such conduct might have in some degree, influenced the verdict against the defendant.

10. **SAME—Intent.** The presumption of law is that a person intends all of the natural, probable and usual consequences of his act; and this presumption of law will prevail, unless from a considera-

tion of all the evidence, the jury entertain a reasonable doubt whether such intention existed.

11. **SAME—Homicide—Justifiable, When.** A homicide is justifiable, by one without fault, who is attacked by another, where the circumstances furnish reasonable ground for apprehending a design to take his life or do to him some great bodily harm, and for believing the danger imminent, and that such design will be accomplished though it may turn out that the appearances were false, and that there was in fact no such design, nor any danger of its being accomplished. But the facts must be such that the jury in the light of all the facts and circumstances known to him at that time or by him then believed to be true, can see that as a reasonable man he had ground for such belief.

12. **SAME—Self Defense.** The law of self defense does not mean or imply the right of attack, nor will it permit of acts done in retaliation, or for revenge.

13. **SAME—Murder—Verdict—Lesser Degree—Instructions.** Where, on a trial of an indictment for murder, the evidence however slight, would warrant the jury in returning a verdict for a lesser degree included in the charge, it is the duty of the court to instruct the jury as to such lesser degree, and if after considering all of the evidence, the jury entertain a reasonable doubt as to which of two or more degrees the defendant is guilty, they can convict of the lowest of such degrees only, and of which they have no reasonable doubt of guilt.

14. **SAME—Evidence of Good Character of Accused.** In criminal cases proof of good character is competent to show that the defendant would not be likely to commit the crime charged against him, and proof of good character may in many cases be sufficient to create a reasonable doubt of guilt, although no such doubt could have existed except for the good character, but evidence of good character can only be considered in connection with all the other evidence, facts and circumstances appearing in the trial; and if after considering all of the evidence, including that as to good character, the jury entertain no reasonable doubt of guilt, they should convict, notwithstanding the evidence of former good character.

15. **SAME—Instructions Offered by Parties—Statute.** By the provisions of section 5230, Statutes of 1893, "Either party may present to the court any written charge, and request that it be given. If the court thinks it correct and pertinent, it must be given; if not, it must be refused. Upon each charge presented and given or refused the court must indorse or sign its decision."

16. **SAME—Instructions—Not Error to Refuse, When.** Instructions requested by the defendant and refused by the court. Examined and found to have been fully covered by the instructions given by the court in each and every material matter. It is not error

for the court to refuse a request for instructions, even though such request correctly states the law, where it is fully covered in instructions given.

(Syllabus by the Court.)

*Error from the District Court of Noble County; before Bayard T. Hainer, Trial Judge.*

*S. H. Harris,* for plaintiff in error.

*H. S. Johnston, County Attorney, J. C. Robberts, Attorney General,* and *C. H. Woods, Assistant,* for defendant in error.

STATEMENT OF FACTS.

Ralph Wells, the plaintiff in error, was indicted by the grand jury at the December, 1901, term of the district court of Noble county, charged with the murder of one James M. Powell. Trial was had at the November, 1902, term of that court; verdict was returned finding him guilty of manslaughter in the first degree; motion for a new trial heard and overruled by the court, and exceptions saved; and he was sentenced to a term of eight years in the penitentiary, and that he pay a fine of one hundred dollars and costs; he appeals, and brings the case here by petition in error and case made for review.

Opinion of the court by

BEAUCHAMP, J.: The first error assigned is the order of court overruling challenge of plaintiff in error to the grand jury, and the order of the court overruling the motion of plaintiff in error to set aside the indictment. The ground for the motion is the alleged illegal organization of the grand jury which returned the indictment. The same questions involved

in this assignment were presented to this court in the case of *Sharp v. United States,* 13 Okla. 522, and as this court in that case has determined the questions raised adversely to the contention of the plaintiff in error, it is unnecessary to give them further consideration here.

The provisions of the statute in regard to the mode of obtaining jurors are directory, and a substantial compliance with the requirements of the law is sufficient. The court will not reverse the ruling of the district court overruling a motion to set aside an indictment on the grounds that the grand jury were not chosen, selected and drawn according to the provisions of the statute, and overruling an objection to the manner in which the list of persons from which the panel was selected was made up, when such objections are purely technical, and do not affect the substantial rights of the parties, and when it does not appear that any material right has been prejudiced thereby.

In the trial, Dr. Watson, a witness on behalf of the Territory, after having fully qualified as a medical expert, who as coroner had made a careful examination of the body of the deceased and the surroundings shortly after the homicide, after having described the wound, the points of entrance and exit, and direction of the bullet through the body, the holes in the clothing worn by the deceased, the position of the body when first observed by him, and all of the surrounding facts and circumstances in detail, was, over the objection and exception of the defendant, permitted to give his opinion as to the position of the deceased at the time that the wound was inflicted, his answer being:

"Well, just from the way his feet were crossed, sitting

as he was, I would think that his position was that he was sitting upright, probably leaning a little to this side; and when the shot was fired that he probably just dropped in that direction. That was the idea I got from the nature of the wound; that is, from the direction of the wound and all, and the position that he was found in the buggy."

The course of the bullet as shown by the evidence was from front to back, through the body, entering on the left side about one inch above the axilla, or arm pit, passing out about one inch above the point of the shoulder blade; the defendant testified that while he was standing in the road at the lane leading to the deceased's house watching a party whom he suspected was attempting to steal wheat from the granary, the deceased came up to him in a buggy, and after threatening him, reached in his buggy and picked up something, and, quoting the language of the defendant, "reached it in front of the bows; I reached up my gun and shot." The admission of the testimony of the witness, Dr. Watson, as above, the plaintiff in error contends was permitting the witness to establish by his oath an important controverted fact in the case, and one that was not the subject of expert testimony, and which was purely a matter of argument and conclusion to be drawn from all the facts and circumstances in the case, and should have been left to the argument of counsel and judgment of the jury. While there are some authorities which hold that under no circumstances will expert evidence be admitted as to the position of the body of the deceased at the time when the wound was inflicted. nor as to the position of the person inflicting it, these being considered subjects upon which the jurors are competent to form independent opinions, and that a medical ex-

pert can form no better opinion or conclusion from the facts than can the jurors themselves, there are other cases in which the opinions of experts have been received in respect to such matters. (Am. & Eng. Enc. of Law, Second Ed. vol. 12, p. 449, and cases cited.)

But if error, we are unable to see how it could have prejudiced the defendant; he was the only witness to the homicide, admitted the shooting, and his statement of the position and attitude of the deceased at the time he fired the fatal shot in no way conflicts with the opinion of the doctor; there is nothing in his opinion inconsistent with the defendant's evidence or theory or defense. Therefore there was no issue upon which the admitted evidence could have exerted any prejudicial influence with the jury; it was manifestly harmless, and if error, would afford no ground for reversal. (*People v. Lemperle,* [Cal.] 29 Pac. 709; *People v. Hill,* [Cal.] 48 Pac. 711.)

R. E. Wade, a witness who was not shown to be an expert, but who examined the body of the deceased, the wound and the location thereof, the points of entrance and exit of the bullet before the deceased was removed from the buggy, and who after the body was removed to the house where the inquest was being held, probed into the wound with his "trocar," an instrument about eleven inches in length, was permitted to testify as to the length and course of the wound, and as to the direction of the bullet through and after it had left the body, that is to say, that the bullet did not penetrate the back of the seat of the buggy. The witness was not asked to state his opinion as an expert, but simply to state facts with reference to an examination made

by him, of the body and of the wound, such facts as did not require the opinion of an expert, but only such as any person of ordinary intelligence could testify from examination and observation. Such evidence was competent and proper, and the court committed no error in admitting it, the only objection being that the witness was permitted to testify without having shown any qualifications. There was no dispute or controversy as to any of the matters testified by the witness.

Counsel for plaintiff in error contends that his client was prejudiced because of insinuations by both court and counsel during the trial, as well as the rulings of the court upon evidence offered, but does not attempt to direct our attention to the particular matter complained of, but leaves us to search the record from pages 130 to 338 inclusive. While ordinarily this court will not examine the record in any case in search of prejudicial errors, which are not clearly pointed out in the brief of counsel, owing to the nature of the charges made by counsel in this instance, we have examined the record carefully, and we are unable to find sufficient grounds for any such complaint or charges. There was evidence admitted by the court, as to the movements and whereabouts of the persons, Sewall, Lyons and Carter, who were then under indictment for this same offense, under the assurance by counsel for the Territory that the same would be made competent. Subsequently it was shown by the evidence that these parties had taken considerable interest on the side of the defendant in the trouble that had arisen between defendant and deceased over the possession of a farm sold by deceased to defendant; that on the evening

·of, and just prior to the homicide, the defendant had a conversation with them in which the defendant said he was going to get possession, and immediately started towards the deceased's place, carrying his gun, with which he shot the deceased; that they heard deceased drive up to his house, heard the conversation between defendant and deceased, heard the shot, started back to see what had happened, and met the defendant, who informed them that he had shot Powell, and turned his gun over to Sewall; that they then accompanied defendant to the home of Lyons, defendant riding Lyons' horse; that they remained at Lyons' house about three hours waiting for any outcry or what alarm might be given by deceased's family; it being then about 11 o'clock at night, Carter and Sewall accompanied defendant to Perry, where defendant surrendered to the sheriff. That ·on Saturday, October 5th, Lyons and the defendant went to the house of the deceased, and in his absence forcibly took possession, and removed from the house the furniture and property of deceased, the defendant being armed with the identical rifle with which he fired the fatal shot; and Lyons with a shotgun. In short, the record discloses that these parties were sympathizing with and assisting the defendant from the beginning of the trouble between deceased and ·defendant, and up to the very day of the trial. The evidence was sufficient to warrant the grand jury in returning an indictment against them, and the proof was sufficient to justify the trial judge in permitting the facts to go to the jury. Where evidence has been offered tending to show a conspiracy, the acts and conduct of any one or more of those shown to have been engaged in pursuance or execution

of a common design and purpose, are admissible in evidence in the trial against either of the parties connected with the conspiracy. And it is not error for the trial court to first permit evidence of the acts and transactions of the alleged conspirators upon the assurances by the county attorney that such evidence will be made competent by proof of a conspiracy later. (*Devore v. Territory,* 2 Okla. 562.)

The evidence was sufficient to show, or, at least, is of such a character as to have a strong tendency to show, a plot or conspiracy on the part of the defendant and Sewall, Lyons and Carter, and was sufficient to justify the admission of the acts and conduct of these parties. Slight evidence of collusion is all that is required. (*Perkins v. Territory,* 10 Okla. 518.)

Counsel for plaintiff in error complains that the witness Hamlin was required to state "what he had heard, not from any particular individual, but all that he had heard in the neighborhood in any way about any of these parties," "and was required to state what he understood from this hearsay matter, and what his opinions were, and what meanings were conveyed to his mind by statements of Mr. Lyons and others," and directs our attention to pages 159-160 and 166 of the record. At pages 159-160 we find that the witness stated that he did not go up to Mr. Powell's place to see whether anything had happened, because he was afraid to go, and after being pressed by counsel to state the occasion of his fear, he answered that he had heard that Mr. Powell and Mr. Hysmith were armed. If the court erred in admitting this testimony, it clearly was favorable to the defendant, if it could have any weight or influence whatever, and we are

wholly unable to see how it could possibly have been prejudicial to the defendant. On page 166 of the record referred to we find that the witness Lyons, who, after testifying that the defendant left his (Lyons) house just a short time before the homicide, carrying in his hand the gun with which he fired the fatal shot, and stating to him that he (defendant) 'was going to take possession," was asked "to what the defendant referred when he said he was going to take possession" to which he answered, that he "thought it was rather a joke, but afterwards concluded that perhaps he referred to the matter of the Saturday night before, when he and the defendant were at Powell's house"—the substance of this testimony being that he understood that the defendant referred to the occasion when the witness and defendant went to the house of the deceased, and in his absence took possession. The testimony of the witness as to the facts and manner of taking possession on the Saturday before the homicide, are not controverted, and the statement of the opinion of the witness that the defendant referred to that occasion, would tend to contradict the theory of the prosecution that the defendant meant by his statement at that time that he was contemplating assaulting or injuring Mr. Powell; and if error, could not be prejudicial to the defendant; but if it had any weight with the jury, must of necessity have been benficial to him.

It is next contended that the court committed error in admitting evidence of the former difficulty between deceased and defendant; that is, the evidence before mentioned with reference to the difficulty over the possession of the land, and the taking of possession by Lyons and the defendant in

the absence of Mr. Powell, on the Saturday prior to the day of the homicide. This evidence was admissible on the question of motive for the purpose of showing hatred and malice on the part of the defendant. (Whar. Cr. Ev., sec. 786; *State v. O'Neil,* 51 Kan. 651.)

Again, counsel argues that: "Beginning with the defendant's evidence on page 213 of the record, it will be noticed that the scope of the examination is kept as narrow as possible, and in strong contrast with the very liberal rulings of the court in permitting the prosecution to present what it could prove * * * * ," Again counsel has failed to point out any particular matter of which he complains, but we have examined the record, and there is no justification for such a charge; and while we admire and appreciate the interest counsel seems to entertain in the cause of his client, still we think that he should not permit his anxiety and interest to so far overcome his better judgment and duty to the courts in which he practices as to make charges of the character and of the nature made in this case, without justification or reason, and that without as much as even attempting to direct our attention to any fact or circumstance which would justify the charge. Counsel claims that on pages 230 and 238 the record will show that the court refused to permit the defendant to state that he had been advised by the county attorney to go to the place where the difficulty afterwards occurred, and watch the premises for the purpose of ascertaining who was stealing his property, and argues that this related to the purpose and motive of defendant in going to the place in question, and was an important fact in the case from beginning to end. By re-

ference to page 230 of the record we find that the court refused to permit the defendant to testify who had advised him to go to the Powell place and watch the premises, but by reference to page 231, the next question following, the defendant was asked, "if he had been advised by the acting or assisting county attorney, to watch there and ascertain what was being done with his property there on the premises," which was objected to and objection overruled by the court. And the defendant answered that he had, and was then asked "who was the officer that so advised him," and answered, "Thomas Doyle." From the record we presume that the court sustained the objection to the first question asked for the reason that the question propounded assumed that the witness had been so advised, as when the question was put in proper form the court overruled the objection to it. It is clear that the defendant was permitted to testify as to the very matter that he desired, and the mere fact that the witness was not permitted to answer a question the form of which the court thought to be objectionable, and was permitted to answer the question when in proper form, could in no way prejudice the defendant; even though the court erred in the first instance, the defendant was not deprived of the benefits of the desired testimony, and such error would be rendered harmless.

The ruling of the court sustaining the objection of counsel to the question as to what was the appearance or indications as to whether any wheat had been taken out of the bin, and permitting the defendant to state for what purpose he had gone there, was merely requiring that the witness state the facts with reference to going to the place of

the homicide, that the jury might be permitted to conclude the purpose. This was not error.

Complaint is made that counsel for the Territory frequently indulged in remarks and accusations of the most damaging character, which were made in the form of questions to the defendant under the pretense of cross-examination, and which amount to accusing the defendant of several separate and distinct crimes, and that no attempt was ever made throughout the trial of the case to substantiate the accusations or insinuations, or to show any excuse or cause therefore. By reference to page 259 of the record, cross-examination of the defendant in regard to the occurrence of the Saturday night just prior to the homicide, is the following:

"Q. You drove this woman with a baby less than a week old in her arms, out of the door with this gun?

"A. No. sir.

"Q. Mrs. Powell was laying in bed confined with recent confinement at that time?

"A. No sir, she was not."

Then following a number of questions in regard to throwing the furniture into the yard is the following:

"Q. Do you know where Mr. Sewall and Mr. Carter are at this time? Defendant objects as incompetent, irrelevant and immaterial, and objects to the line of questions that has been asked by counsel as not being proper, and evidently not based to prove the insinuations therein contained. Which objection is by the court overruled, to which ruling of the court, the defendant than and there excepts. A. I did not. Q. Did you put up the money, through your friends or yourself for the bond for their appearance? A. No. sir. Mr. Harris: We make the same objection and the same reasons.

to the court. Which objection is by the court overruled, to which ruling of the court the defendant then and there excepts. Q. Did you deposit $1000 in the Exchange Bank in this city through your friends or attorneys for the purpose of indemnifying the bank in case of forfeiture of those bonds? Same objections by defendant as before, which objection was by the court sustained, to which ruling of the court plaintiff then and there excepts. The court: Ask if those parties are absent by his procurement." Thereupon the examination proceeds upon other matters.

On page 205 record of the testimony of W. S. Lamb, deputy clerk of the court, in reference to an affidavit filed by defendant in support of application for bail, is the following:

"Q. Have you that affidavit in your custody? A. No. sir. Q. Do you know what became of it? Objection by defendant was overruled and exceptions allowed. Mr. Harris: We submit and tender to the gentlemen an exact copy of the affidavit and admit that the original cannot be found, but we have a copy that I know to be exact. We admit that it is lost or destroyed, and not in the files of the court. The court: They tender a copy of it. Mr. Diggs: The law, I submit, is this, a person cannot destroy a paper and then furnish a copy. Mr. Harris: I object to the insinuation of counsel that the paper was destroyed by counsel for defendant. I object to the statement as not a proper statement, and ask the court to direct the jury that the assertion of counsel is not proper. The court: Objection sustained. The jury will not consider the statement of counsel; they are withdrawn from the consideration of the jury."

The paper was accepted as a copy of the affidavit, and by the Territory introduced as evidence.

It is plain that counsel's object was to impress the jury by the form of his questions that it was a fact that the defendant had driven the wife of the deceased out of their house

with a gun, in the absence of her husband, and at a time when she was still confined to her bed from recent confinement, and with a baby less than one week old; not even so much as stated in the form of a question, but stated as a fact not dependent upon the answers of the witness. The only possible purpose of these statements was to create a feeling and prejudice in the minds of the jurors against the defendant by impressing them with the fact that the defendant had been guilty of conduct so cruel and depraved that if true could but only create in the minds of all true men, hatred and disgust. And this without any evidence to justify. It is true that there is evidence to the effect that the defendant and one Lyons did go to the house of Mr. Powell in his absence and demand possession of the house from Mrs. Powell, who when the demand was made stated that she did not blame defendant for wanting possession, and immediately stepped out, but no testimony to the effect that Mrs. Powell was laying in bed with a baby less than one week old.

The record discloses that Sewall and Carter were indicted by a grand jury for this same offense, and we may reasonably infer they had given bonds for their appearance, and had failed to appear, at least were not present during the trial of defendant. The only conclusion that can be drawn from the questions of counsel is that his intention and object was to convey to the minds of the jurors, that these persons were important witnesses for the prosecution, and that the defendant was responsible for their absence; that he had deposited in the bank $1000 through his friends or attorneys for the purpose of indemnifying the bank in case of forfeiture, thus enabling Sewall and Carter to absent themselves,

disregard their bonds and deprive the prosecution of the benefit of their testimony, and this seems to have been the view taken by the trial court, for he promptly sustained the objection of counsel for defendant, and directed counsel for the Territory to inquire if those parties were absent by the procurement of the defendant; whereupon counsel for the Territory, to if possible more firmly impress the jury of the truth of his accusations, excepted to the ruling of the court and abandoned further examination along that line.

And again when it was discovered that the affidavit desired to be offered in evidence by the prosecution was lost, and counsel for the defendant had courteously tendered a copy that was in his possession, and that he knew to be substantially correct, he was met by the insinuation in the presence and hearing of the jury, that counsel had destroyed the original; thereby purposely seeking to impress the jury that counsel for defendant was guilty of destroying evidence prejudicial to his client the defendant.

The court sustained the objections to some of the questions, and instructed the jury to not consider them; to the others the witness answered in the negative. We have examined the entire record and are of the opinion, in the light of all of the facts, that the conduct of counsel in this case does not constitute reversible error.

Plaintiff in error complains of instruction No. 5 given by the court, which reads: "5. Upon the question of intent the court instructs the jury, that the law presumes a person intends the natural, probable and usual consequences of his act; and this presumption of law will always prevail unless from a consideration of all the evidence bearing upon the

point the jury entertain a reasonable doubt whether such intention did exist," for the reason that, "there was evidence in the case fully explanatory of all circumstances in connection therewith, and the prosecution was not entitled to presumptions to strengthen or add force to their evidence."

The jury of necessity found that the homicide was perpetrated without a design to effect death, therefore against the legal presumption as instructed by the court, and in what way the instruction in view of the verdict of the jury, strengthened or added force to the evidence for the prosecution, we are unable to see. However, the instruction correctly states the rule. (Greenleaf on Evidence, 16 Ed. vol. 3, sec. 13-14, pages 18-19).

Complaint is made of instructions Nos. 6, 8, 9, 10, given by the court and which read:

"6. The court instructs the jury that the defendant in this case has taken the witness stand in his own behalf and has admitted that he shot the deceased, James M. Powell, but claims that such shooting was done in self defense. And the court instructs the jury that the law on the subject of self defense is that if a person is assaulted in such a way as to induce in him a reasonable belief that he is in actual danger of losing his life, or of suffering great bodily harm, he will be justified in defending himself, although the danger be not real but only apparent. And in this case if the jury believe from the evidence that the defendant, Ralph Wells, was assaulted by the deceased in such a way as to induce in the defendant a reasonable and well grounded belief that he was in actual danger of losing his life, or of suffering great bodily harm, then he was justified in defending himself, even to the extent of taking the life of his assailant, although the danger was not real, but only apparent.

"8. The court further instructs the jury that the law

of self defense does not mean or imply the right of attack, nor will it permit of acts done in retaliation, or for revenge. And in this case, if you believe 'from the evidence, that the defendant sought out or brought on the difficulty at the time the fatal shot was fired, and for the purpose of wreaking vengeance upon the deceased, James M. Powell, on account of the acts of the deceased in reference to the sale of the farm in controversy and to deliver the possession thereto and that at the time the defendant shot the deceased there was no reasonable apprehension of immediate and pending injury to the defendant, and that the defendant shot the deceased from a spirit of retaliation or revenge, and for the purpose of punishing the deceased for past injuries, then you are charged that the defendant cannot avail himself of the law of self defense, and that the shooting and killing of the deceased affords no justification or excuse.

"9.    The court instructs the jury, that if a person kills another through mere cowardice, or under circumstances which are not, in the opinion of the jury, sufficient to induce a reasonable and well grounded belief of danger to life, or of great bodily harm, in the mind of an ordinarily courageous man, the law will not justify the killing on the ground of self defense.

"10.    In this case the court instructs the jury, that if you believe from the evidence, beyond a reasonable doubt, that the defendant, Ralph Wells, on the night of October 9th, 1901, in the county of Noble, Territory of Oklahoma, left the residence of one Lyons, with a loaded rifle, and went to the place or near the place where James M. Powell then resided, and laid in waiting around said premises for the purpose of taking the life of the deceased, James M. Powell, and that the said defendant shot the deceased while returning to his home and while riding in the highway in a buggy, and that at the time he shot the deceased he had no reasonable and well founded belief that his life was in danger, or that he would suffer some great bodily injury at the hands of the

deceased, then in that event, the defendant is guilty of murder as charged in the indictment and the jury should so find."

Exception was taken to instruction No. 6, and it is argued that because of the language used "reasonable and well grounded" that the instruction is erroneous, and can only mean that "the facts and circumstances relied upon must be genuine or real, and not merely apparent or sufficient to satisfy the reason."

A homicide is justifiable, by one without fault, who is attacked by another, where the circumstances furnish reasonable ground for apprehending a design to take his life, or to do him some great bodily harm, and for believing the danger imminent, and that such design will be accomplished though it may turn out that the appearances were false, and that there was in fact no such design, nor any danger of its being accomplished, but the facts must be such that the jury in the light of all the facts and circumstances known to him at the time or by him then believed to be true, can see that as a reasonable man he had ground for such belief. (*Todd v. State,* 44 S. W. 1096; *State v. Crawford,* [Iowa], 23 N. W. 684; *Coil v. State,* [Neb.] 86 N. W. 925, and cases cited).

And this is exactly what the court instructed the jury in this instance, that the belief must have been "reasonable and well grounded;" that the appearances of danger, not the facts, must have been well grounded, that, considering all of the facts and circumstances, he must have had reason for believing that he was then in danger of losing his life or suffering great bodily harm. The fact that the deceased had made threats of a violent nature against the defendant would not justify the defendant in killing the deceased, if at the time the deceased did nothing to excite in the mind of the

defendant any fear that he was then about to execute the
threats which had previously been made by him. The de-
fendant on the witness stand admitted the killing, and at-
tempted to justify on the grounds of self defense, and it was
for the jury to determine in the light of all of the facts includ-
ing the alleged previous threats, whether the defendant was
justified; whether he was by the deceased assaulted in such a
way as to induce in him a reasonable and well grounded belief
that he was in actual danger of losing his life, or of suffer-
ing great bodily harm. And the use of the language, "a
reasonable and well grounded belief" in connection with the
instructions given, can only be understood to mean, that the
defendant actually and in good faith believed that he was
then in danger, and that he had reason and cause for such
belief. The objections to instructions Nos. 9 and 10 are
based upon the same line of reasoning; therefore require no
further notice.

As to instruction No. 8, it is not contended that it does
not correctly state the law, nor is our attention directed to
any particular objectionable language, but only, in the lan-
guage of counsel, that the language used "could hardly be
more damaging to the defendant." The instruction is not
open to the objection urged, and correctly states the law ap-
plicable to the facts of the case.

By instruction No. 12 the court instructed with reference
to the lesser degree of the crime charged, manslaughter in
the first degree, and of which the defendant was convicted.
Counsel contends that this was error, that the defendant un-
der the facts was guilty of murder or justified on the grounds
of self defense, and not guilty. All of the facts and circum-

stances surrounding the homicide were in evidence before the
jury. The defendant testified that he went to the place of
the homicide for an honest purpose; that the deceased sud-
denly came upon him, and immediately commenced to abuse
him. There was evidence of intense bitter feeling between
them, growing out of their former difficulties. It was the
duty of the court to instruct upon the evidence in the case;
and while the evidence might have been sufficient to war-
rant the jury in returning a verdict for murder, they were
the judges of the facts, and after having fully considered all
of the evidence, including that of the defendant, and having
found that the homicide was felonious, if they then enter-
tained a reasonable doubt as to whether the killing was the
result of heat and passion suddenly aroused by the appear-
ance and manner of the deceased at the time, or of the pre-
meditated malice and design of the defendant, it was their
duty to give to the defendant the benefit of the doubt and
find him guilty of the lesser degree. The instruction in view
of the whole evidence was properly given.

Instruction No. 15 given by the court was excepted to,
and counsel argues that the instruction "taken as a whole
practically advises the jury that they are to consider the
case on all the other evidence for the purpose of ascertain-
ing whether or not the defendant is guilty, and then if he is
guilty, his evidence in relation to good character is immater-
ial." The instruction does not warrant the conclusion of
counsel. The court after instructing the jury that evidence
of previous good character was competent in favor of the
defendant as tending to show that he would not be likely to
commit the crime charged against him, further instructed
that if from all the evidence the jury were satisfied beyond

a reasonable doubt of the guilt of the defendant, then it was their duty to find him guilty notwithstanding he had previously borne a good reputation as a quiet, peaceable, and law abiding citizen.

Proof of good character was competent to show that the defendant would not be likely to commit the crime charged against him.   One always having lived an honest, upright life, a peaceable, law abiding citizen, is not likely to commit crime, especially that of taking life, and proof of good character may in many cases be sufficient to create a reasonable doubt of guilt, although no such doubt could have existed except for the good character; but evidence of good character can only be considered in connection with all the other evidence, facts and circumstances appearing in the trial, and if, after considering all of the evidence, including that as to good character, the jury entertain no reasonable doubt of guilt, they should convict, and that notwithstanding the evidence of former good character.   And that is precisely the instruction of the court in this instance, and was a fair statement of the law.

Again complaint is made of instruction No. 16, given by the court, and which reads:

"16.   You are instructed that the defendant has offered in evidence the contract for the purchase of what is known as the Powell farm, and also the deed to said premises.   This evidence is proper for the jury to consider for the purpose of showing that the defendant had a right to go upon such portions of said land, the possession of which had been surrendered, or delivered to the defendant by the deceased, James M. Powell.   But in this connection you are instructed that if you find from the evidence that the deceased, James M. Powell, had failed, neglected or refused to surrender the pos-

session of the house or any other portion of the farm, to the defendant in accordance with the terms of the contract and deed, which have been offered in evidence, such fact would not afford any justification or excuse for taking the life of the deceased, James M. Powell, and the defendant was not justified under such circumstances in invading the house and premises, the possession of which was not surrendered, by force or violence. The laws of this Territory afford ample remedy for a person to secure the possession of lands unlaw-fully detained by another, without resort to force or violence."

At the request of the defendant, the court also gave instruction No. 21 as follows:

"21. You are further instructed that the evidence in re-lation to the entry into the house on the premises in question by the defendant on the 5th day of October, 1901, is to be considered in connection with all the other evidence in deter-mining the nature of the difficulty in which the deceased was killed; and the feeling between the parties, and the motive or lack of motive on the part of the defendant, to unlawfully kill deceased. Otherwise, the merits of that difficulty are not involved in this case, and you cannot convict the defen-dant on account of any wrong that may have been committed at that time."

It is argued by counsel that by instruction No. 16 "the court advised the jury that the defendant was at a place where he had no right to be at the time of the fatal encoun-ter." In this counsel is evidently mistaken; the instruction unquestionably refers to the evidence in relation to the entry into the house on the Powell place on the 5th day of October, 1901; and while the instruction may be subject to criticism as diverting the attention of the jury to a wrongful act of the defendant in a matter collateral to the issues being tried, by instruction 21 the court clearly directed the jury for what purposes they could consider the evidence with reference to

that difficulty, and in unmistakable language instructed them that the merits of that difficulty were not involved, and that they could not convict the defendant on account of any wrong that may have been committed at that time. Considering the two instructions together, there was no prejudicial error.

Again complaint is made that the court indorsed instruction No. 21, "Given at request of defendant." This was in strict compliance with the provisions of section 5230, Statutes of 1893, which provides, "Upon each charge presented and given or refused the court must endorse or sign its decision."

We have carefully examined the whole charge given by the court, and find no material prejudicial error in the instructions given.

Complaint is made that the court refused to give certain instructions requested by the defendant. We have carefully examined each of the instructions requested, and find that they were fully covered by the instructions given by the court in each and every matter material. It is not error for the court to refuse a request for instructions, even though such request correctly states the law, where it is fully covered in instructions given; and this is true even though the court may not have used the identical language contained in the request. It is substance to which the courts will look, and not the language that may have been adopted by the court to convey its meaning. We have carefully examined each and every question raised by the plaintiff in error but do not copy the instructions requested, for the reason of the already great length of this opinion; and should we do so our answers could be but the one answer, that they are fully covered

in the instructions given by the court; therefore to do so would simply be a waste of time and space, and could in no way benefit the plaintiff in error, or the profession.

Finding no material error in the record prejudicial to the right of the defendant, the judgment of the district court of Noble county is affirmed, at the cost of plaintiff in error, and the judgment of that court is ordered to at once be carried into execution.

Hainer, J., who presided in the court below, not sitting; all the other Justices concurring.