## W. J. JAMISON v. STATE.

No. A-5272.   Opinion Filed Nov. 20, 1926.
(250 Pac. 548.)

D. S. McDonald and Utterback & Stinson, for plaintiff in error.

Geo. F. Short, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Bryan county for the crime of manslaughter in the second degree and sentenced to serve a term of two years in the state penitentiary.

The record discloses a state of facts about as follows: Defendant was a deputy sheriff living at the town of Kemp, where deceased also resided; up to the time of the difficulty their relations had been friendly. Some days before the difficulty defendant, with the town marshal, arrested two Indians for drunkenness, and they had been fined, and it appears claimed they had been overcharged in the matter of costs, and had asked deceased to adjust the costs with defendant. At the time of the difficulty just after dark, defendant was at a store and deceased came in. He told defendant he wanted to see him, and they stepped out on the porch in front of the store building, where deceased took up with defendant the matter of costs. This apparently angered defendant, who called deceased a liar, and in substance told him when he wanted an attorney he would let him know, and that if he butted into his business any more he would "biff" him right in the mouth, to which deceased answered: "Go ahead and biff!" Defendant thereupon struck deceased in the face and a fight was precipitated in which deceased knocked the defendant down and was pulled off by some bystanders. Defendant immediately renewed the fight, and deceased again knocked defendant down, and he arose with a pistol in his hand, which was discharged and deceased shot in the right

breast, from which he died in about 20 minutes. Immediately after the shooting defendant declared the shot was accidental and he had not intended to fire the pistol but merely to strike deceased with it. There is little conflict in the evidence.

The first assignment of error argued is the exclusion of competent evidence offered by defendant. This is directed to an offer to prove the reputation of the defendant as a diligent, energetic, and peaceable officer. Evidence was admitted that defendant had the reputation of being a peaceable and law-abiding citizen, and this was conceded by the state. The homicide, however, was not committed by defendant in attempting to arrest deceased or in the exercise of any of his duties as a peace officer. He was not acting in an official capacity at the time of the homicide, but merely as a private citizen. His reputation as a peace officer was not an issue in the case and had not been attacked in any manner. It was a collateral issue, and this evidence was properly excluded.

It is claimed the court erred in refusing defendant's requested instruction No. 4, which in substance embodies the law of self-defense by one unlawfully attacked, and concludes in substance that if deceased brought on the difficulty, in the course of which he did defendant serious bodily injury, and the appearances were such as to justify defendant in believing that he would suffer further great bodily harm, and that he drew his gun for the purpose of using it as a club to protect himself from the unlawful attack of deceased and in so defending himself it was accidentally discharged, as a result of which deceased was killed, then they should acquit the defendant. This request is not particularly objectionable as a statement of the law of self-defense applicable to the facts prov-

en. The gist of this request, however, is given in the court's charge, as quoted in the next assignment of error, which is directed to the court's instructions Nos. 11, 12, and 13. No exception was taken to instruction No. 11, nor was it assigned as error in the motion for a new trial. These instructions follow:

"(11) In this case the defendant, as a part of his defense, claims that he acted in self-defense during the difficulty which ended in the death of said Garvin Sweeney. In this connection you are instructed that the law gives every person who is unlawfully assaulted or attacked the right to defend himself from such assault or attack in order to avoid death or serious bodily harm at the hands of his assailant, and when it appears to him, as a reasonable man, that he is in danger of being killed or of receiving great personal injury at the hands of his assailant, he has the right to defend himself therefrom even to the extent of taking life. But you are instructed that this law of self-defense is defensive in its nature and not offensive—that is, one cannot make an assault upon another, nor can he voluntarily enter into a difficulty with another, and claim the right of self-defense, if during the difficulty which ensued he himself was in danger of being killed or of receiving great personal injury at the hands of his opponent and to protect himself from such danger, kills or injures his adversary.

"(12) You are therefore instructed that if you believe from the evidence, or have a reasonable doubt thereof, that at the time and place mentioned in the information the said Garvin Sweeney made an assault, that is, made a willful and unlawful attempt or offer with force or violence to do the defendant a corporal hurt, which led the defendant, situated as he was and as a reasonable man, to believe that the said Garvin Sweeney was about to kill him or do him some great personal injury, and that the defendant did honestly and really believe that he was in imminent danger of losing his life or of receiving some great personal injury at the hands of said Garvin Sweeney, and that under

such conditions and circumstances the defendant drew his gun for the purpose of using it as a club to protect himself from the attack of said Sweeney, and that in using said gun to so protect himself he used that degree of care and caution in handling the gun that a person of ordinary caution and prudence would have used under like or similar circumstances, and that while so using said gun it was discharged at and into the body of said Sweeney inflicting a wound upon the said Sweeney from which he thereafter died, then and under these circumstances the killing of said Sweeney by the defendant would have been justifiable, and it would be your duty to acquit the defendant and return a verdict of not guilty.

"(13) You are further instructed that homicide cannot be justified or excused on the ground that the person killed, prior to the killing, had committed a mere assault and battery upon the person doing the killing, but when an assault and battery has been committed upon the person who did the killing, this may be taken into consideration by the jury in determining whether it reasonably appeared to the person who did the killing that he was at the time in danger of losing his life or of receiving great personal injury at the hands of his assailant."

It is urgently insisted that these instructions are erroneous in telling the jury that defendant must have acted as a reasonable man in order that his right of self-defense avail—that the jury were thereby misled to the prejudice of defendant. The evidence must be viewed in a favorable light to warrant the giving of an instruction on the theory that deceased made an attack on defendant. The evidence fairly discloses a case of mutual combat. Upon this point the defendant upon cross-examination testified:

"* * * Q. Now, he told you he would like to go down with you to Daddy John and get that matter fixed up, didn't he? A. No, sir.

"Q. Didn't he tell you that he had been instructed

by these Indians for whom he worked to see you and try to get that matter settled? A. Not in that language, Mr. Hatchett.

"Q. What did he say? A. I told him that it was not any of his business, and he said that it was his business—that the Indians had told him to collect the cost from me.

"Q. Well; what was the language that brought up the question of a liar? A. About the charge, I guess; I said it was all, and he said it was not.

"Q. Well; did you call him a liar. A. Yes, sir; I think so.

"Q. And he called you a liar? A. Yes, sir.

"Q. Which one passed the lie first? A. I don't remember.

"Q. Now, you also told him that whenever you needed a secretary that you would call on him, didn't you? A. Yes, sir.

"Q. He told you that he didn't want the job? A. Yes, sir.

"Q. You also told him that if he didn't quit meddling in your business that you were going to biff him one right between the eyes? A. I don't know whether I said between the eyes or not; I told him that I would hit him or something like that.

"Q. That if he didn't quit interfering with your business you were going to hit him? A. Yes, sir.

"Q. Then, he said, 'Hit away'? A. Yes, sir.

"Q. Yes, sir; then you hit? A. Yes, sir; we both hit right then.

"Q. Well; you hit first, didn't you? A. No, sir; I don't think I did.

"Q. Do you know who hit first? A. I think we both struck at the same time. * * *

"Q. When you called him a liar, you got pretty mad in order to do that, did you not? A. Yes, sir.

"Q. Now, you could have hit the first lick, could you not? A. I could have done it.

"Q. You won't tell the jury that you hit the first lick. A. I will tell the jury that both struck at the same time—just about the same time.

"Q. But you don't know which one hit the first lick? A. No, sir; I don't know which one hit first; we both started about the same time; I don't know which one struck first.

"Q. And you tell the jury that you told him before any lick was struck that if he didn't quit interfering with your business you were going to hit him? A. If he didn't keep his mouth out of my business.

"Q. And he told you to hit? A. Yes, sir.

"Q. Then the fight started? A. The fight started. * * *"

If the correct test of the right of self-defense is that a reasonable man situated as defendant was or as it reasonably appeared to him would have acted as defendant did, there is no error in the instructions. In 30 Corpus Juris, pp. 30, 31, § 176, the rule is stated as follows:

" * * * A reasonable conclusion under the circumstances that accused was in immediate danger of death or great bodily harm, although in fact no such danger existed, will be sufficient to eliminate the elements of malice and felonious intent, the appearance and not the reality of danger being the test, although defendant must have entertained an honest belief that he was in such danger, his act must be necessary or honestly believed by him to be necessary to prevent the injury, and the circumstances must have been such as to excite the fear of a reasonable man. * * *"

In 13 R. C. L. p. 818, § 122, it is said:

"The rule adopted by a number of the states, and what seems to have been the common-law rule, is that when a person is assaulted, and kills his assailant in self-defense, the question to be determined is, Did the slayer, under all the circumstances as they appeared to him, honestly believe that he was in imminent danger of losing his life, or of suffering great bodily harm, and that it was necessary to do what he did in order to save himself from such apparent threatened danger? and not, Would a reasonable man, or a man of reasonable courage, have so believed? The jurors, say the courts giving support to this rule, must place themselves in the position of the defendant at the time of the act, and determine, from all the facts as they appeared to him, whether his apprehension or fear of death or serious bodily injury was reasonable. *What appears to be the prevailing rule in America asserts that the apprehension of danger and belief of necessity which will justify killing in self-defense must be a reasonable apprehension and belief, such as a reasonable man would, under the circumstances, have entertained.* (Italics ours.) Under this rule, a man threatened with death must determine from appearances and the actual state of things surrounding him, as to the necessity of resorting to self-defense; and, if he acts from reasonable and honest convictions, he will not be responsible criminally for a mistake as to the extent of the actual danger where other judicious men would have been, alike, mistaken."

Here it will be noted that the rule at common law and that adopted by a number of the states differs from what appears to be the prevailing rule as stated in the text quoted. There are authorities supporting the common-law rule and the rule of some of the states as above quoted. The latter rule, however, has been followed by the territorial court and by this court. In the case of Wells v. Territory, 14 Okla. 436, 78 P. 124, syllabus 11, it is said:

"A homicide is justifiable, by one without fault, who is attacked by another, where the circumstances

**310**

furnish reasonable ground for apprehending a design to take his life or do to him some great bodily harm, and for believing the danger imminent, and that such design will be accomplished though it may turn out that the appearances were false, and that there was in fact no such design, nor any danger of its being accomplished. But the facts must be such that the jury in the light of all the facts and circumstances known to him at that time or by him then believed to be true, can see that as a reasonable man he had ground for such belief."

In Turner v. State, 4 Okla. Cr. 164, 111 P. 988, an instruction was approved stating that the law required the jury to view the circumstances at the time from the defendant's standpoint, as they reasonably appeared to him—that is, that the circumstances as they appeared to him were sufficient to excite the fears of a reasonable person that his life was in danger, or in danger of great personal injury being done, or apparently so.

Also, in the case of Mulkey v. State, 5 Okla. Cr. 75, 113 P. 532, it was held that the trial court should have given an instruction that the jury should take into consideration the facts and circumstances, etc., that defendant as a reasonable man in good faith believed at the time of the killing that his life was in danger or in danger of great bodily harm, etc.

The rule announced is not contrary to the holding of this court in the case of Rogers v. State, 8 Okla. Cr. 226, 127 P. 365. In that case the jury were instructed that before they would be justified in acquitting the defendant on the ground of self-defense, that ought to believe the defendant's cause for apprehension was reasonable, and unless the facts constituting such cause were shown by the evidence in the case, they could not acquit the defendant on the ground of self-defense even though they believed that defendant really thought

he was in danger. There the burden was placed on the defendant not to raise a reasonable doubt of his apprehension of danger at the time he fired the fatal shot, but to affirmatively establish by the evidence that his apprehension was reasonable, based upon reasonable cause. That is, the instruction there told the jury they must believe that the defendant was not guilty before they could acquit.

The law requires that the circumstances and appearances relied upon as creating an apprehension of danger be viewed from the defendant's standpoint and be such as to cause the defendant situated as he was, as a reasonable person, an apprehension of danger. Mere cowardice, without circumstances as viewed from the defendant's standpoint to cause him to reasonably apprehend danger, will not justify a killing on the ground of self-defense.

Upon the whole case, we find that the case was fairly tried, the evidence supports the verdict, the instructions correctly submit the issues to the jury, and no error materially prejudicial is apparent.

The case is affirmed.

BESSEY, P. J., and DOYLE, J., concur.