## T. M. FULTON v. STATE.

No. A-5722. Opinion Filed April 2, 1927.
(254 Pac. 761.)

Bridges, Vertrees & Ivy, for plaintiff in error.

George F. Short, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DOYLE, P. J. Appellant, T. M. Fulton, was tried

in the court below on an information for the murder of W. W. McMasters. The jury, by their verdict, found him guilty of manslaughter in the first degree and assessed his punishment at imprisonment in the penitentiary for a term of 35 years, and, from the judgment duly pronounced in pursuance of the verdict, he appeals.

This appeal does not involve the sufficiency of the evidence, but rather presents alleged errors of law committed in the course of the trial. The following brief statement of the facts will be sufficient to make clear the contentions made: It appears from the transcript that the killing occurred on the main street of Addington, about 2 o'clock Saturday afternoon, December 22, 1923. Appellant, Fulton, and deceased, McMasters, were farmers, living east of Addington, and the trouble arose over McMasters' cattle getting into Fulton's field. It appears that Fulton, on several occasions previous to the homicide, had impounded McMasters' cattle, under the Herd Law (Comp. St. 1921, § 3925 et seq., and Comp. St. Supp. 1926, §§ 3973, 3974, 3981—1 to 3981—5), and had charged McMasters certain damages which McMasters had paid.

Dr. G. W. Murphy testified:

"I was in the drug store. Hearing the shots, I looked out and saw a crowd on the sidewalk. I went to the fallen man; he was dead. I turned him over; it was Mr. McMasters. I found the fatal wound between the third and fourth ribs, under the arm pit. The bullet must have passed through the right lung and through the heart. There was another wound on the left side. He had a dollar or two dollar bill in his right hand. I handed it to Mr. Huffer. I examined his pockets and found some pistol cartridges, some keys, and some coin, maybe 50 cents; no weapon of any kind, not even a knife was found."

L. F. Edwards testified:

"I was standing three or four steps from Mr. Mc-

Masters when Mr. Fulton stepped up on the sidewalk. Mr. McMasters was reading a letter. He had some money in his hand. Fulton pulled his gun and pointed it at McMasters. He snapped the gun two or three times and then fired. McMasters wheeled and Fulton fired again."

J. E. Barton testified:

"I saw the defendant leave his father's store and cross the street, then turn north to the Vanbibber store and step off the sidewalk; I looked off; in just a second I heard a gun fire; I turned and saw the defendant pointing the gun at McMasters; he was wheeling, and the defendant fired the second shot, then he went across to his father's store. I asked him what in the name of common sense and reason caused him to shoot the old gentleman in the back. He said: 'I didn't shoot him in the back; I shot him with his face towards me. If he had acted a man with me, I would not have shot him.'"

Five or six other eyewitnesses were called by the state. The testimony of each is substantially to the same effect.

For the defense, J. D. Willoughby testified:

"I was standing on the sidewalk in front of Vanbibbers. About 10 feet from me a man had some papers in his hands looking at them and when the shot was fired the man was putting whatever he had in his hands in his pocket, then he turned into Vanbibbers."

As a witness in his own behalf the defendant testified:

"My age is 25 years. I live 10 miles east of Addington with my wife and children on my father's farm. I had trouble with McMasters over his stock destroying my crop. I finally had to Herd Law his cattle. I took up seven head. He settled for them. After he paid me the last time I received a note on the top of a cotton pile on my place about 200 yards from McMasters' house.

He was then asked: "What did the note say?" State's objection sustained. He further testified:

"I, with my brother, was driving two yearlings out of the field and a shot fired. I rode up to the gate, and McMasters and his boy were there. He said, 'You got them, did you?' I said, 'Yes.' He said, 'You played hell, too,' and in the conversation he called me a God damn lying son of a bitch. I got off my horse and was going to try to whip him. He drew a gun, and said, 'Stop, you damn son of a bitch, or I will blow your head off,' and said, 'If you Herd Law these calves, God damn you, I will kill you.' That was my last talk with McMasters before I met him in Addington. When I first saw him that day McMasters was standing with his hands almost in front of him; I stopped kinda sudden; he looked up and around at me and put his hand in his pocket; I believed he was going for his gun; I thought he was about to shoot me and I shot him; I fired until I thought I was safe, then I went back to my father's store."

Taking up the errors assigned in the order in which appellant presents them, the first is that the court erred in refusing legal and competent evidence offered by the defendant. Under this assignment it is contended that the court erred in refusing to permit witness Mrs. Shorbe to testify to a certain conversation alleged to have been had with the defendant some time prior to the commission of the homicide relative to what he should do about the stock of the deceased trespassing on his land.

The court having sustained the state's objection, defendant offered to prove that he told the witness, after the witness had suggested that he resort to the Herd Law, that he hated to do that because it always brought on hard feelings between neighbors. It is obvious that this alleged conversation tends to prove no material issue in the case. Furthermore, it was nothing more nor less than an effort on the part of the defendant to prove a self-serving declaration made by him to a third person. This evidence was properly excluded by the court, under the rule that a self-serving declaration made by accused

to third persons is inadmissible. Hopkins v. State, 9 Okla. Cr. 104, 130 P. 1101, Ann. Cas. 1915B, 736.

It is further argued by counsel for appellant that the court erred in refusing to permit the defendant to testify concerning the contents of the note which he claims to have found on a pile of cotton in his field the previous November. The offer to prove shows that the defendant would have testified that the alleged note contained the following language:

"You are a God damn son of a bitch for taking $2.50 for Christmas money."

And it is argued that the language quoted would tend to show the state of mind of the deceased towards the defendant.

It is elementary that, before secondary evidence of the contents of a written instrument may be introduced in evidence, even admitting the relevancy of the evidence, it must be shown that the original has been lost and a search made for it, and that it could not be found. There is no such showing in the record. Furthermore, before evidence of this kind could be introduced, a predicate must be laid to show that the writing is the act of the person intended to be charged therewith. The defendant testified that he did not know who wrote the note, and that he did not know McMasters' handwriting. We find no error in the court's rulings in the admission or rejection of evidence.

The only other assignment of error is that the court erred in giving the following instruction:

"No. 16. You are instructed, gentlemen, that it is not necessary to the right of self-defense that danger should actually exist, that is, it may only be apparent, not real, and that the defendant is entitled under the law to act upon appearances, and if the language or conduct of the deceased, at the time of the homicide, was

such as to induce in the mind of a reasonable man, under all the circumstances then existing, and viewed from the standpoint of the defendant, a fear that death or great bodily harm was about to be inflicted by deceased on the defendant, it does not matter then if such danger was real or only apparent, and if the defendant acted from real and honest conviction as to the character of the danger, induced by the existence of reasonable circumstances, he should be acquitted, though it afterwards develops that he was mistaken as to the extent of the danger, or if you entertain a reasonable doubt as to whether the defendant so acted, you should resolve such doubt in his favor and acquit him. Excepted to by defendant for the reason same is not the law. Exceptions allowed. M. W. Pugh, Judge."

Counsel for appellant in their brief say:

"The instruction is not broad enough to cover the law as it should have, in that the defendant, Fulton, not only had the right to take into consideration the language and conduct of deceased in light of the circumstances then existing, but should have been allowed to take into consideration the previous acts and conduct of the deceased."

While we do not think this instruction is open to the criticism lodged against it, it appears that the next instruction given by the court fully covered the law of threats or hostile demonstrations made by the deceased towards the defendant, in that the same should be considered as tending to show "the reasonableness of the defendant's apprehension of violence at the hands of the deceased, and as a circumstance in determining what the defendant might have reasonably apprehended from the overt act or demonstration of the deceased, if any he made, at the time of the shooting."

The court further instructed the jury:

"That in considering the evidence in this case you should place yourselves as nearly as possible in the position occupied by the defendant at the time he fired the

fatal shot, and to consider the circumstances and conditions surrounding him from his viewpoint, and as they appeared to him in the light of the facts known to him at the time."

Taken as a whole the instructions were more favorable to the defendant than the law requires.

To justify a killing in self-defense there must be a reasonable belief on the part of the defendant that he is in danger of losing his life or receiving great bodily injury at the hands of the deceased, and such real or apparent danger must be imminent at the time of the killing. Agent v. State, 18 Okla. Cr. 281, 194 P. 233.

It is fundamental that the law of self-defense, which is a law of necessity, involves the question of the right to act upon appearances of imminent danger, either actual or only apparent. Apparent necessity, if well grounded and of such a character to appeal to a reasonable person, under like conditions and circumstances, as being sufficient to require action, justifies the right of self-defense to the same extent as actual or real necessity.

If, however, he acts on these appearances, he does so at his peril, because the law leaves it to no man to be the exclusive judge of the reasonableness of the appearances upon which he acts, but prescribes a standard of its own, which is, not only did the person acting on the appearances himself believe that he was in danger of losing his life or receiving great bodily injury, but would a reasonable man, situated as the defendant was, seeing what he saw and knowing what he knew, be justified in believing himself in danger. C. S. 1921, § 1754, subd. 2; Jamison v. State, 35 Okla. Cr. 302, 250 P. 548.

It is for the jury to say, under all of the evidence and under proper instructions from the court upon the subject, whether appearances of danger were real or apparently real so as to justify action in self-defense.

In conclusion we simply add that a careful examination of the record and briefs convinces us that the defendant had a fair trial, and, finding no material error, the judgment of the lower court is affirmed.

EDWARDS and DAVENPORT, JJ., concur.