## WARNER H. EDWARDS v. STATE.

No. A.-4056.   Opinion Filed July 24, 1923.
(216 Pac. 947.)

(Syllabus.)

**Trial—Instructions—Repeating Rule as to Reasonable Doubt not Required.** The court, instructing the jury in a criminal case, is not obligated to repeat over and over again the words "beyond a reasonable doubt," where from a reasonable interpretation of the instructions as a whole it must be apparent to the jury that every material issue must be established beyond a reasonable doubt.

Appeal from District Court, Bryan County; Geo. S. March, Judge.

Warner H. Edwards was convicted of manslaughter in the first degree, and he appeals. Affirmed.

W. E. Utterback and D. S. MacDonald, for plaintiff in error.

Geo. F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J. The plaintiff in error, Warner H. Edwards, here designated the defendant, was on April 22, 1921, by verdict of a jury found guilty of manslaughter in the first degree and his punishment assessed at confinement in the state penitentiary for a term of four years. From the judgment on the verdict he appeals.

The facts disclosed by the state's evidence are that Bailey Bacon and Ed Hampton, the deceased, were hauling sand through a field belonging to A. J. Edwards, the father of the defendant, on the morning of the day on which the tragedy occurred; that they were driving across some rows of corn and that A. J. Edwards met them in the field and asked them not to drive over his corn, but to go around by the road; that at this time there was no particular unpleasantness and no unfriendly words were spoken. Just before noon Ed Hampton, the deceased, who lived some 300 yards west of the Edwards house, started to the Edward house to see the senior Mr. Edwards, stating that he understood Edwards had sent him some message by his wife. Bacon asked him not to go, but Hampton continued on toward the Edwards home; Bacon following close behind and taking with him a sack of corn that had been knocked down when they were driving across the field that morning. When they reached the house they found the senior Mr. Edwards sitting on the porch and Ed Hampton asked him what kind of a message it was that he had sent him. Edwards denied sending any message, whereupon Hampton advanced on him in a threatening manner and made some statement about striking him. Mr. Edwards got up out of his chair and retreated from Hampton, who then climbed up on the porch and followed Mr. Edwards a short distance, and took hold of the

chair in which Mr. Edwards had been sitting, raised it from the floor and lowered it again. Warner H. Edwards, the defendant, then came out of the east room, a few feet east of where Hampton and Edwards were standing, stepped off the porch and shot the deceased with a shotgun, shooting him a second time after he got off the porch.

The defendant claimed that he was justified in the shooting, claiming that it was necessary in the protection of his father who was apparently about to be injured by the deceased. The testimony on the part of the defendant tended to show that the deceased, Hampton, advanced on the senior Edwards as he was sitting at the end of the porch, cursing him and threatening to break his neck; that the defendant, who was sitting at the other end of the porch, east of where his father was sitting, heard this, and that he thereupon stepped into the room and procured a shotgun and walked back out and stepped off of the porch; that at that time deceased was threatening defendant's father with the chair, which he was holding in a threatening manner; that his father retreated some distance up the porch with his arm upraised to ward off the blow, and that while he was in this position the defendant fired both shots as rapidly as he could fire a double-barreled shotgun. Defendant testified that he believed at the time that it was necessary to shoot in order to protect his father from the threatened danger.

There was evidence, undisputed, that Warner H. Edwards, the defendant, was a man of good reputation as a peaceable, law-abiding citizen; also, evidence tending to show that the deceased was of a turbulent and quarrelsome disposition and was a dangerous man, and that the defendant knew this. There was evidence to show that the deceased was a large man physically, well developed and able-bodied; and that the defendant's father was an aged man and feeble.

The only alleged error of which complaint is made in defendant's brief is that instructions numbered 15, 16 and 17 given by the court did not fairly and correctly state the law as to the issues of fact relating to apparent danger, provocation, and intent.

The court in this case gave twenty-two instructions, covering every phase of homicide warranted by the evidence, including appropriate instructions on justification, self-defense, and reasonable doubt. It would serve no good purpose to quote these instructions or analyze them in detail. We have carefully examined them, separately and as a whole, and find that they fairly and clearly state the law of the case, and that the objections thereto are without merit. Particular emphasis is placed on objections to the language used in instruction No. 17, because of an omission to use, at two or three places in the instruction, the words "beyond a reasonable doubt." The question of reasonable doubt was clearly treated and stressed in other instructions, and an instruction will not be held erroneous for a failure to repeat and reiterate, over and over again, the term "beyond a reasonable doubt" when it appears that in that and other paragraphs of the instructions the court has made it clear to the jury that every issue of fact raised must be proved beyond a reasonable doubt. Davis v. State, 16 Okla. Cr. 377, 182 Pac. 909; Seigler v. State, 11 Okla. Cr. 131, 145 Pac. 308; Nutt v. State, 8 Okla. Cr. 266, 128 Pac. 168; Spencer v. State, 5 Okla. Cr. 7, 113 Pac. 224; Cole v. State, 18 Okla. Cr. 430, 195 Pac. 901.

It would seem that it was unnecessary for the defendant to resort to the use of firearms under the circumstances in this case. The father and son together should have been able to protect the father from a threatened assault and battery with a chair without firing a gun. Under the evidence, as shown by

the record, the defendant should consider himself fortunate that the verdict was for manslaughter and that the punishment assessed was the minimum for the offense of which he was found guilty.

The judgment of the trial court is affirmed.

DOYLE, J., concurs.

MATSON, P. J., absent and not participating.