## JOHN LITTLE v. STATE.

No. A-4126.    Opinion Filed Nov. 5, 1923.
(219 Pac. 424.)
(Syllabus.)

1. **Trial—Omission of Addresses on List of State Witnesses not Vital, When.** The omission of the post office addresses of certain witnesses for the state, on the list of witnesses for the state served on the defendant, is not vital, where the post office addresses are known to the defendant, and where each of the witnesses had testified; and been cross-examined at the preliminary trial.

2. **Continuance—Denial for Absent Witnesses—Discretion.** Alleged error in refusing a continuance examined, and found to be without merit.

3. **Instructions Approved.** Instructions relating to presumption of innocence, reasonable doubt, and self-defense examined, and found fair to the defendant.

Appeal from District Court, Carter County; Thos. W. Champion, Judge.

John Little was convicted of manslaughter in the first degree and he appeals. Affirmed.

Mathers & Coakley and Thomas Norman, for plaintiff in error.

The Attorney General and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J. Plaintiff in error, John Little, here designated the defendant, was by information filed in the district court of Carter county, December 3, 1920, charged with the murder of Frank Jones, committed on the 27th day of October, 1920. At the trial, May 10, 1921, by a verdict of the jury he was found guilty of manslaughter in the first degree, with his punishment assessed at confinement in the penitentiary for a term of seven and one-half years. After the overruling of a motion for a new trial, judgment in accordance with the verdict was rendered, from which defendant appeals.

The evidence discloses that Frank Jones, the person who lost his life in this tragedy, was standing near the edge of the sidewalk in Healdton, engaged in a conversation, when the defendant approached. The witnesses on the part of the state testified that, as the defendant approached the deceased, the former drew his gun, and commenced firing at him; that Jones took hold of one of the men with whom he had been conversing, and tried to hold him between himself and the defendant; that this man struggled loose, and that the deceased then left the sidewalk, and passed between two automobiles parked there, and that the defendant continued firing at deceased as he retreated. There were four or five shots fired in rapid succession, three of which penetrated the body of the deceased, two of these being necessarily fatal, according to the testimony of expert physicians.

There was some testimony on the part of the defense

tending to show that near the instant the defendant approached and began firing, the deceased put his left hand to his rear left pocket, and dropped something on the sidewalk. The defendant himself testified that when the deceased made this gesture he believed that he was preparing to draw a gun for the purpose of shooting defendant, and that the shots fired by defendant we fired in his necessary self-defense.

The testimony nowhere indicates that after the firing of the first shot by the defendant the deceased made any gesture or movement indicating that he had or intended to use a gun. It appears that the deceased had been an officer, and was in the habit of carrying a gun. As to whether he had a weapon, at this particular time the evidence is conflicting. No weapon was found on the body of the deceased, or near the scene of the tragedy. It seems to have been the theory of the defense that the deceased dropped his weapon, and that some of his friends who were witnesses to the tragedy, possibly his son, picked up the weapon and carried it to his home, where it was found the next day.

The several assignments of error urged by the defendant, vitally affecting the issues, may be condensed as follows, into three: First, permitting certain witnesses to testify whose post office addresses were not designated on the list of witnesses served upon the defendant; second, overruling of the motion for a continuance; third, alleged erroneous instructions.

The record discloses that the names of four persons, John Bunch, Andrew Jones, Monroe Jones, and Charles Vernon, were indorsed on the information as witnesses, and that a copy of the same was served upon the defendant, as required by law, but that no post office address for any of

these witnesses was indicated. The record further discloses that all of these witnesses were residents of Healdton, and that they had been present, and testified at the preliminary trial, and had been cross-examined by counsel for the defendant. Under the circumstances, this alleged error, or omission to designate the post office addresses, was harmless.

After the beginning of the trial, and after the jury were impaneled and sworn, counsel for the defendant stated to the court that certain witnesses had been duly subpoenaed to appear and testify on behalf of the defendant, and that these witnesses were absent without the consent of the defendant, and asked the court for time in which to prepare a motion for a continuance in proper form. This request was denied, and the attorneys for the defendant were directed to give the names of the absent witnesses to the clerk, indicating that an attachment would be issued for these witnesses, if the defendant so desired; but no request for compulsory process was made by the defendant or his attorneys. Later, a formal motion for a continuance was filed, setting out that three witnesses, W. I. Chron, J. W. McCain, and Ed Huffaker, were absent and were material witnesses for the defendant; that they had been duly served with process; and that they were absent without the consent or connivance of the defendant. The application stated that J. W. McCain was an eyewitness to the homicide; that he saw the defendant approaching Jones on the sidewalk, and that as he approached Jones reached toward his left side for a pistol which was in his belt, and started to draw it, and that after Jones made this movement Little pulled his gun and started firing; that Little had made no effort to harm Jones until the latter made this demonstration. Nothing was stated in the application as to what the testi-

mony of Chron and Huffaker would be. Nothing was stated as to the whereabouts of either of the witnesses, or whether or not their attendance could be procured later in the event of a continuance.

This court has so often passed upon the question of the right of a defendant to a continuance and the showing necessary to be made as a prerequisite to claiming such right that we deem it useless to reiterate the reasons set out in former opinions. The trial court, as we hold, did not abuse his discretion in overruling the application for a continuance. The testimony of McCain, if true, would have been merely cumulative, and no defense to the offense of manslaughter, as later developed in the evidence and as decided by the jury. The testimony disclosed that, after the defendant commenced shooting, the deceased retreated, and that the defendant continued shooting until the deceased lay mortally wounded, and helplessly prostrate on the street. If it could be conceded that the defendant had a right, in the first instance, to draw a weapon and begin shooting, the testimony of the defendant and his witnesses shows that some of the shots fired later, after the deceased retreated were without justification.

The court, on his own motion, gave 28 separate instructions to the jury, defining murder, manslaughter in the first degree, the right of self-defense, burden of proof, and the law of reasonable doubt, covering, as we analyze these instructions, every issue of law and fact developed by the testimony. We think these instructions, separately and as a whole, were fair to the defendant.

The defendant claims that certain instructions were faulty, in that they did not correctly state the law of self-defense; that they did not give a correct definition of the

law of manslaughter in the first degree; that the instruction relating to self-defense might be construed to mean that the defendant was required to retreat; and that this and other instructions shifted the burden of proof to the defendant. Ordinarily, jurors are not expert logicians, capable of making fine distinctions in technical legal definitions. It is not necessary to repeat over and over that each material fact must be proved beyond a reasonable doubt, or to incorporate in the instructions an extended treatise on the law of self-defense. Where the instructions as a whole fairly state the law, as they did in this case, in language easily understood by persons of ordinary intelligence, mere obscure technical inaccuracies will be waved aside. The purpose of a criminal trial is to determine the guilt or innocence of the person accused, and, if such accused has been denied no substantial right, a judgment of conviction will not be disturbed.

The defendant, under the evidence, may consider himself fortunate that he was not convicted of murder. The judgment of the trial court is affirmed.

MATSON, P. J., and DOYLE, J., concur.