## ROBERT RICH v. STATE.

No. A-5000.   Opinion Filed Aug. 1, 1925.
Rehearing Denied Sept. 26, 1925.
(239 Pac. 183.)

Utterback & Stinson, for plaintiff in error.

Geo. F. Short, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for the State.

BESSEY, P. J.  For the sake of brevity, the plaintiff in error will be referred to as the defendant. The defendant and Will Barker, the person killed, were neighbors, living about four miles southwest of the town of Bennington, in Bryan county. About two or three weeks before the homicide, a male hog belonging to the deceased got out of his pen and strayed onto the premises of the defendant's father, with whom the defendant made his home. The defendant caught this hog and castrated him. On Saturday

following, Barker and the defendant met in the town of Bennington, and Barker asked the defendant if he had castrated his hog. The defendant replied that he had, whereupon Barker drew his knife, and the defendant, at the same time or a little later, drew his knife, and in the affray that ensued defendant was cut on one arm. Hostilities then ceased for a moment, and the defendant told Barker that he could whip him without a knife, whereupon both men put up their knives and engaged in a fist fight until they were separated. Barker then went to a store and bought an automatic shotgun. He then proceeded homewards in his wagon, with his daughter and another young woman accompanying him. Soon after Barker left town, the defendant got in a car with a man named Shumate, who said he would take the defendant home. Presently these two passed Barker in his wagon, near the Manning schoolhouse and also near a log house occupied by a man named Johnson; they were then about a mile distant from defendant's home and about two miles from Barker's home. Defendant got out at Johnson's house and borrowed an automatic pistol, directing Shumate, the driver of the car, to proceed on his way, and stating that he would walk the rest of the way. As Barker and the two young ladies approached the Johnson house, the defendant came out with the pistol in his hand and began cursing Barker and threatening his life. Barker jumped out of the wagon, and a gun fight followed between the two men, in which several shots were fired but no one injured.

On the morning of the homicide, Barker drove a hayrake past the home of the defendant, on his way to deliver it to another neighbor. After delivering the rake, Barker returned, riding a horse and leading a mule, and just before he got in front of defendant's home the defendant, riding a horse and armed with a shotgun, approached. When they met, or just before they met, the defendant fired at Barker at close range; the shots penetrating Barker's chest.

Barker, after riding about 50 feet farther, fell from his horse and presently expired. There was evidence tending to show that at the time Barker was shot he had a knife in his hand. The defendant claims that he closed his knife and was in the act of drawing a pistol when defendant fired, in his necessary self-defense. An hour or more after the tragedy, and after the place had been visited by the defendant's father and others, a pistol was found at the scene of the shooting. The officers to whom the defendant surrendered asked him whether Barker had a gun, and the defendant replied that he did not see any, but that Barker had made a gun play. There was testimony on the part of the state indicating that the only revolver owned by Barker was at his home, wrapped up in an old shirt in a dresser drawer, and that it was there found the afternoon of the tragedy.

The errors assigned by the defendant and argued in his brief relate to the instructions given by the court.

First, instruction No. 13 is challenged, wherein the court said:

"If, however, you believe from the evidence that the defendant, Robert Rich, * * * armed himself with a deadly weapon for the purpose of meeting and encountering the said Will Barker, intending then and there to have a difficulty with him, and that when he did meet him he voluntarily entered into the difficulty with him and killed him during the course of it, then he would be guilty of murder, regardless of who made the first overt act or demonstration towards engaging in the difficulty, and under those circumstances, no matter how imminent the peril in which the defendant found himself, he could not justify the killing of the said Barker under the plea of self-defense."

The defendant claims that this is a vicious instruction, because it states that the defendant could not plead justification no matter what the circumstances might be. This instruction, considered in connection with the other instructions given, is not subject to this criticism and does not

come within the rule announced in Gibbons v. Territory, 5 Okla. Cr. 214, 115 P. 129. The instruction in the Gibbons Case and the facts upon which it was predicated are different, as an examination of that case will disclose. In the case at bar the parties had had previous difficulties; threats had been made and communicated; there was no eyewitness in the immediate vicinity of the homicide. The instruction as given, considered along with the other instructions and the evidence supporting it, under the circumstances in this case, could not have operated to the prejudice of the defendant.

Instruction No. 13 is merely a continuation of instruction No. 12, which stated that if the jury believed from the evidence, or had a reasonable doubt thereof, that the defendant met Will Barker by chance, or without any intent to enter into a fatal difficulty with him, and that Will Barker then and there made such an overt act or demonstration as led the defendant, situated as he then was, viewed from the viewpoint of a reasonable man, to believe that he was about to be killed by Barker, or was about to receive some great personal injury at his hands, and that the defendant honestly believed that he was in danger, and that he shot and killed Barker to protect himself, the defendant in that event would be justified, and if the jury so found they should acquit him.

A constant repetition to the jury that they must find all facts beyond a reasonable doubt is not necessary, where it appears from the instructions as a whole that that feature of the law was sufficiently emphasized in the instructions considered as a whole. In a case like this jurors are not expected to act upon or consider finespun distinctions of the law on reasonable doubt and burden of proof. Little v. State, 25 Okla. Cr. 190, 219 P. 424; Edwards v. State, 24 Okla. Cr. 169, 216 P. 947; Dorris v. State, 27 Okla. Cr. 208, 226 P. 590.

In instruction No. 11, relating to justifiable homicide, or self-defense, the court made this statement:

"This rule of justifiable homicide, or self-defense, as stated in the foregoing paragraphs of these instructions, is given one for his protection, and is defensive in its nature and not offensive; it means that a person who is unlawfully attacked has a right to use force, and no more, as reasonably appears to him to be necessary under the circumstances."

The defendant claims that this declaration is condemned in the case of Franks v. State, 8 Okla. Cr. 71, 126 P. 582. An examination of that case will disclose that the instruction there given and the facts to which it was meant to apply are different from those in the instant case. The clause, "as reasonably appears to him to be necessary under the circumstances" (for his protection), states the true rule, and this instruction is not subject to condemnation as pointed out in the Franks Case, or the case of Brown v. State, 15 Okla. Cr. 64, 175 P. 66.

Paragraphs 13 and 14 of the instructions are further challenged by defendant upon the ground that the two considered together shifted the burden of proof to the defendant. The court holds that his objection is not well taken. It would serve no good purpose to enter into a technical discussion on that point.

Next instruction No. 7 is challenged. This instruction reads as follows:

"You are further instructed that if you find and believe from the evidence beyond a reasonable doubt that the defendant, Robert Rich, while testifying as a witness in his own behalf, admitted that in the county of Bryan and state of Oklahoma, on or about the 22nd day of May, 1923, he shot and killed Will Barker with a shotgun, then it would be your duty to find the defendant guilty of murder, unless the defendant has shown facts and circumstances of mitigation which

would tend to excuse or justify the killing, by some proof strong enough to create in the minds of the jury a reasonable doubt of his guilt of murder, or unless the proof upon the part of the state tends to show that the offense, if any, only amounts to manslaughter, or that the defendant was justified in the killing of the said Will Barker."

The language used in the concluding part of this instruction might be improved upon, but considered along with the opening portion of the instruction and the other instructions given, we hold that this instruction was not misleading, and that reasonably construed and interpreted along with the other instructions, it did not shift to the defendant the necessity for any greater degree of proof than the law contemplates. From the instructions as a whole it is apparent that the jury was required to find that a culpable homicide was committed, beyond a reasonable doubt, deduced from all the evidence in the case.

Finally, the defendant says that the court erred in instructing the jury upon the issue of manslaughter. This court does not agree with that contention. The record shows that the defendant and the deceased had had numerous quarrels; that there was malice and hard feeling existing between them; that on two previous occasions they had engaged in mutual affrays. The circumstances surrounding the killing might indicate to the minds of impartial jurors that this fatal affray started without any premeditated intent to kill, but culminated in homicide, under heat of momentary passion. There was sufficient evidence to support this theory, calling for an instruction on manslaughter.

There was no error in refusing the instructions requested by the defendant. The instructions given substantially, and, considered all together, fairly, covered the law of the case.

The judgment of the trial court is affirmed.

DOYLE and EDWARDS, JJ., concur.