HOMER PENNEQUINE v. STATE.

No. A-5576. Opinion Filed Jan. 22, 1927.
Rehearing Denied Feb. 28, 1927.
(253 Pac. 303.)

Wilson, Murphy & Duncan and Beckett & Lewis, for plaintiff in error.

George F. Short, Atty. Gen., and Houston B. Teehee, Asst. Atty. Gen., for the State.

DOYLE, P. J. In the information in this case, filed in the district court of Osage county, Homer Pennequine was charged with the crime of murder, alleged to have been committed in said county on or about the 28th day of August, 1923, by killing one Ben Avant. Upon his trial the jury found him guilty of manslaughter in the first degree and fixed his punishment at imprisonment in the penitentiary for the term of 5 years. From the judgment rendered in pursuance of the verdict he appeals.

The defense interposed was justifiable homicide. The evidence shows that deceased, Ben Avant, had been a resident in that community about 31 years, engaged in stock raising and farming. He was a man of family; his wife an Osage Indian; his age was 56 years; and

he was a duly commissioned deputy sheriff at the time of his death. The town of Avant had been named for him. His home was just outside the town on the north. He was the owner of a store building occupied as a drug store, facing east on Main street at the northwest intersection corner of Main and Broadway. Just off the corner of the sidewalk southeast of the drug store entrance was an iron hitching post.

The defendant, age 32 years, lived practically all his life in Okmulgee county. On August 8, 1923, he assumed the duties of marshal of the town of Avant. About a week later he found a horse hitched to the iron post and moved the horse from the post. An hour later a controversy arose between defendant and Mr. Avant over the removal of the horse. In the afternoon of August 28th the defendant again found the same horse hitched to this post and told Mr. Avant to remove his horse from the post. In the course of the controversy over the matter the defendant drew his gun and searched Mr. Avant for weapons. After some talk Mr. Avant mounted his horse and rode off in the direction of his home. In a short time he returned, riding south along Main street. He turned west on Broadway. Shortly after he rode east on Broadway and turned north on Main street. Dismounting about 30 feet from the corner, he led his horse to the curb, stooped over, and began wrapping his bridle reins about a stone. The defendant walked up and shot him three times.

Several witnesses testified that they saw the defendant advance up the sidewalk about 20 feet; that while Mr. Avant was still in a stooping position with both hands down holding the bridle reins the defendant said, "Mr. Avant," and as Mr. Avant raised up with the bridle reins in his hands the defendant fired the first shot; that as he fell backwards the defendant fired the

second shot; that he took a step forward and fired the third shot.

The defendant as a witness in his own behalf testified: Mr. Avant dismounted from his horse probably two steps from the curb with the reins in his hands and reached down to wrap the reins around a stone. I was almost in front of him. He looked up and reached for his gun. I jumped forward and grabbed my gun, and I hollered, "Don't do that, Mr. Avant," and I fired three shots as fast as I could pull the trigger. Mr. Avant fell backwards. He was in his shirt sleeves and had his gun in his shirt. When he came around the corner he reached over, and I saw him take hold of the handle of the gun on the outside of his shirt, bringing the handle further towards his belt buckle, and I saw the handle of the gun.

The transcript of the record and the testimony covers 1,400 pages, but we deem the foregoing statement sufficient for the purpose of this opinion.

The first error assigned is the overruling of the defendant's motion for a continuance. The ground stated in his affidavit is that Oscar Martin and Jay Coon are material witnesses, without whose evidence he cannot safely proceed to trial; that he caused a subpoena to issue for said witness, and the return made thereon is, "Not found in the county"; that Oscar Martin if present would testify that he was present "when the defendant and the deceased had some kind of controversy on the street and at that time the defendant searched the deceased; that the deceased got on his horse and rode towards his home; that shortly after that he had a conversation with the defendant about the occurrence, and said to the defendant, 'You are going to have hell;' that the defendant then asked him to assist him in preventing any trouble and he went to his room to get his gun for

that purpose, and while in his room heard the shooting"; that Jay Coon if present would testify that just prior to the shooting the deceased came riding up the street from the south, turned his horse in towards the sidewalk in an open space between where some cars were parked; that as he turned his horse towards the side-walk he held his bridle reins in his left hand and with his right hand reached across to the left side as if to adjust his belt or gun, then dismounted and led his horse towards the sidewalk; that defendant was leaning against the fender of a car about 15 feet south of the place where the deceased approached the sidewalk, and walked towards the place where the deceased was stooping over; that the deceased raised up and made a motion which to the witness appeared to be an effort to reach for his gun, and the defendant fired the first shot, followed quickly by two more.

It appears that the witness Martin had removed to the state of Idaho several months before and that the witness Coon had left the state. The record shows that upon motions of the defendant the cause was continued in January and May, 1924, and was set for trial on September 23, 1924. It appears that the defendant had eight months in which to prepare for his trial.

No rule is more firmly established in this state than that this court will not reverse a judgment of conviction upon the ground that the trial court refused to grant a continuance, unless it appears that such court has manifestly abused its discretion in refusing it. Gentry v. State, 11 Okla. Cr. 355, 146 P. 719; La Cass v. State, 25 Okla. Cr. 130, 219 P. 416; Little v. State, 25 Okla. Cr. 190, 219 P. 424; Graham v. State, 28 Okla. Cr. 266, 230 P. 763.

The application shows an utter want of diligence to have the witnesses in attendance upon the trial. On the

other hand, if the defendant had exercised due diligence, he could have procured the deposition of the nonresident witnesses under the provisions of article 17, Procedure Criminal. In our opinion the application lacks the evidence of good faith, as well as that of due diligence, and was properly denied.

The second asignment is, "Improper evidence admitted for the state." Under this assignment the defendant complains that the court erred in permitting the state to offer in evidence the deputy sheriff's commission issued to the deceased, on the ground that it was not shown that the deceased qualified by taking the oath of office.

The defendant offered evidence to show that the deceased was armed at the time of the homicide, and it was proper for the state to show that the deceased had the authority to go so armed. Under this assignment the defendant also complains that the court erred in permitting the state to offer in evidence in rebuttal as to the conversation had between the witness Barker and the defendant.

The defendant testified to various conversations with several persons during the 20 days he was serving as town marshal. Upon cross-examination he was asked this question:

"In the conversation with George Barker you said 'that the only objection you had to this gun was that the barrel was not long enough to carry the notches you expected to put on it.' "

The defendant denied having made this statement. In rebuttal the witness Barker was permitted to testify that the defendant, in substance, said "that the barrel was not long enough to file notches on it"; that witness thought the defendant was joking.

We think that, in view of the fact that the collateral issue was raised by defendant's evidence, he cannot now be heard to complain of an erroneous ruling of the court thereon. It is the well-settled doctrine in this state that a judgment of conviction will not be reversed on the ground of improper admission of evidence, unless in the opinion of the court, after an examination of the entire record, it appears that there has probably been a miscarriage of justice, or a substantial violation of a constitutional or statutory right guaranteed to the defendant.

The only other assignment is alleged misconduct of the jury. The record shows that, in support of this ground of the motion for a new trial, C. L. Harris, bailiff in charge of the jury, testified that Ben Roebuck, a juror, left the table where the jurors were eating in the cafe, and lit his pipe and walked towards the front of the room 40 or 50 feet from the other jurors; that he did this on two occasions; that the other bailiff was near him; that he did not see him speak to any person. A. N. Murphey testified that after the case was submitted to the jury he saw the jurors on the street at a news stand; that the bailiff was with them. The court ruled that no misconduct was shown.

We think the trifling transgressions which were shown happened by mere thoughtlessness, and could not have in any way prejudiced the defendant. It would be a travesty on justice if a judgment must be reversed for such a reason.

We have with much care examined the voluminous record and have given the errors assigned and argued in the brief careful consideration and the conclusion is irresistible that the defendant had a fair and impartial trial. We think the defendant may consider himself

fortunate because he was convicted of no more serious offense than manslaughter of the first degree.

The judgment appealed from is affirmed.

EDWARDS and DAVENPORT, JJ., concur.