ALBERT LARY v. STATE.

No. A-7152. Opinion Filed Feb. 28, 1931.
(296 Pac. 512.)

112

George Sneed, J. B. O'Bryan, and W. E. Utterback, for plaintiff in error.

J. Berry King, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Marshall county of manslaughter in the first degree and was sentenced to serve a term of 25 years in the state penitentiary.

The record discloses that at the time charged defendant shot and killed one Frank Miller. Defendant was a police officer of several years' experience. Miller was a

young man 20 years of age, who worked at a filling station at Midway near Red River and had paid some attention to a daughter of defendant, aged about 16 years. Defendant had informed Miller he did not allow his daughter to have company on school nights. On the night of the homicide Miller was at a church and took the daughter and a Miss Murr riding, but the daughter had left the car near her home and Miller had taken Miss Murr to her home. The daughter was not at home when defendant returned. He immediately got in his car and went in search of her. He went to the filling station where Miller stayed and fired a single shot from a pistol which killed Miller. No one was present at the time except defendant and Miller. Defendant then sought medical attention and did what he could to aid Miller, who died in a short time. Defendant admitted firing the shot that caused the death, but testified he went to the filling station to inquire for his daughter; that when he did so Miller threw a rock at him and was attempting to throw another and he fired in his necessary self-defense.

The first contention is that at the time the information was filed the district court had no jurisdiction because the transcript of the committing magistrate holding defendant for trial had not been filed in the district court, and that the filing of such transcript is necessary to give jurisdiction. Section 17, art. 2 of the Constitution is:

"No person shall be prosecuted for a felony by information without having had a preliminary examination before an examining magistrate, or having waived such preliminary examination."

Section 2509, Comp. Stat. 1921, is as follows:

"When a magistrate has discharged a defendant, or has held him to answer, he must return immediately to the clerk of the district court of the county, the warrant,

if any, the complaint, the depositions, if any have been taken, of all the witnesses examined before him, the statement of the defendant, if he have made one, and all undertakings of bail or for the appearance of witnesses, taken by him, together with a certified record of the proceedings as they appear on his docket."

It has several times been held by this court that the fact that a preliminary examination has been had or waived constitutes a jurisdictional basis for prosecution of a felony by information. Tucker v. State, 9 Okla. Cr. 587, 132 Pac. 825; Muldrow v. State, 16 Okla. Cr. 549, 185 Pac. 332. In some of the cases it is indicated that it is necessary that a transcript of the magistrate finding probable cause be filed with the court clerk to give the court jurisdiction to try an accused on an information for the crime for which he was held by the magistrate. Lowrance v. State, 33 Okla. Cr. 71, 242 Pac. 862. See, also, Little v. State, 21 Okla. Cr. 1, 204 Pac. 305. Where an examining trial is held before a magistrate and the accused is held for the action of the district court, if he make objection by motion to quash in apt time, the district court is without jurisdiction to try him until a transcript from the magistrate is filed. Section 2509, Comp. Stat. 1921, supra. The mere fact that the information is filed before the transcript is received will not deprive the court of jurisdiction if the order of commitment has been in fact made and entered by the magistrate and the transcript then is filed, for certainly, jurisdiction would attach and authorize a continuation of the prosecution upon the information from the time the transcript required by section 2509, Comp. Stat. 1921, supra, is filed. This precise question does not appear to have been presented to this court, but under a similar constitutional and statutory provision it has been held not fatal. In People v. Tarbox, 115 Cal. 57, 46 Pac. 896, it was said:

"The information upon which he was tried was filed in the superior court on March 9, 1896, and the depositions, transcript, and order of commitment were not returned to the superior court by the examining magistrate until March 10, 1896. Upon his arraignment the defendant moved to set aside the information, upon the ground that it was filed before any commitment, deposition, or other record showing that he had had a preliminary examination, had been returned or filed in said court, and upon the further ground that no order of commitment was indorsed upon the depositions afterwards returned. Said motion was denied, and the defendant excepted. Good practice requires that the return of the examining magistrate should be made and filed before the information is filed, but we are not prepared to say that the filing of the information after the examination was had, and the order holding the defendant to answer was in fact made, was more than an irregularity, which would not justify a reversal of the judgment where it does not appear that it affected any substantial right of the defendant. Section 1258 of the Penal Code provides:

" 'After hearing the appeal, the court must give judgment without regard to technical errors or defects, or to exceptions, which do not affect the substantial rights of the parties.' "

It is next argued that the court erred in refusing defendant's requested instructions 3 and 4. Number 3 in substance refers to evidence introduced by defendant of notice given to deceased that the school board objected to girls riding during school hours and limits such evidence to the purpose of aiding the jury in determining who was probably the aggressor. The failure of the court to give this instruction was beneficial to defendant, for instead of limiting the evidence to a particular purpose, it permitted it to go to the jury for all purposes. Number 4 states in part the law of self-defense; it is covered by the general charge.

Complaint is made that the court erred in his instructions; this assignment is directed particularly to Nos. 8, 11, 13, and 16. No exception was reserved to No. 8, which in a general way states the substance of section 2719, Comp. Stat. 1921. There is no material error, certainly no fundamental error in this instruction.

Instruction 13 reads:

"In this connection you are further instructed, however, that the test as to whether one acted in his self-defense, that is, had the right to kill another in his self-defense, is not the honesty and good faith of the defendant's belief in the necessity for the killing, that is, that he honestly and in good faith believed that he was in imminent danger of losing his life or of receiving great personal injury at the hands of his assailant, but the question is, was his belief that it was necessary to kill his assailant, reasonable, that is, would a reasonable man under the same circumstances have believed it necessary to take his assailant's life in order to protect himself from the assaults of his assailant, and it is this rule of self-defense which you must apply to the evidence in this case."

The objection urged to this instruction is that it places on defendant the burden of showing that he acted as a reasonable man, that it does not direct the jury that the circumstances must be considered from the defendant's standpoint as they reasonably appeared to him, citing Rogers v. State, 8 Okla. Cr. 226, 127 Pac. 365; Colbert v. State, 7 Okla. Cr. 401, 124 Pac. 78; 13 R. C. L. § 122, p. 818; and authorities from other states. If instruction 13 were considered apart from the other instructions of the court, there would be force to the argument. It is well settled, however, that instructions are to be considered and construed as a whole. The law of self-defense is fully covered, and running through the instructions on self-defense is the requirement that the act of defendant

in slaying deceased is to be viewed from his standpoint; that is, as the circumstances at the time reasonably appeared to him. In No. 12 the jury are told that defendant had the right to use such force "* * * as reasonably appears to him, as a reasonable man to be necessary under the circumstances for his protection. * * * He is not required to retreat but has the right to stand his ground and use whatever force reasonably appears to him as a reasonable man, * * * even to the extent of taking human life. * * *" In No. 14 it is said that if defendant "at the time he fired the shot believed, or if they have a reasonable doubt thereof, that deceased had made an overt act, * * * which led the defendant, Albert Lary, situated as he then was and as a reasonable man, viewed from his standpoint * * * that he was in immediate danger of losing his life or of receiving some great personal injury, * * *then the defendant would have been justified. * * *" In No. 14A appears this: "* * * And it is for the jury to determine, viewing the facts and circumstances in the case from the standpoint of defendant. * * *" In No. 15 the words "reasonably appeared to him * * * or that at the said time it appeared to the said Albert Lary. * * *" It is clear that when considered together as a single charge the jury are plainly told that the facts and circumstances surrounding the killing must be viewed from the standpoint of defendant as a reasonable man. This is all the law requires. Jamison v. State, 35 Okla. Cr. 302, 250 Pac. 548. In Edwards v. State, 24 Okla. Cr. 169, 216 Pac. 947, 948, this court held in substance that it was not necessary to repeat over and over the words "beyond a reasonable doubt," when a reasonable interpretation of the instruction made it apparent that the material issues must be proven beyond a reasonable doubt. By the same rule it is not necessary to reiterate the words "as it reasonably appeared to defendant, viewed from his stand-

point," or words of similar import, when from the instructions as a whole it is apparent the jury must have so understood the charge.

As to instruction 11, it is argued, the jury are told that in order to justify a homicide on the ground of self-defense, there must appear reasonable ground to apprehend a design by the person slain to do great personal injury and imminent danger of such design being accomplished. That is, defendant contends that under this instruction the jury must find the danger to be actual and real, citing Humphrey v. State, 8 Okla. Cr. 449, 128 Pac. 742, where it is held in substance such an instruction is erroneous. This instruction is not materially erroneous; it is predicated on an apprehension of defendant based on reasonable ground of a design to do him some great personal injury and the apprehension that there was an immediate danger of such design being accomplished. While not very aptly worded, the principle enunciated is correct. Self-defense exists because of an apprehension of danger of great personal harm and an apprehension that the danger is imminent. Certainly, one would not be entitled to slay another for fear that at some future time the other might do him some great personal injury. This, in substance, has been frequently held by this court. Fitzsimmons v. State, 14 Okla. Cr. 80, 166 Pac. 453; Jamison v. State, supra; Lee v. State, 33 Okla. Cr. 370, 244 Pac. 455; Hunt v. State, 29 Okla. Cr. 255, 233 Pac. 506.

Instruction 16 in substance tells the jury that the purpose for which evidence of threats is offered is to show who is probably the aggressor, and further if the jury find that the killing was because of such threats or by reason of the fact that deceased had been riding in a car with a daughter of defendant, he would be guilty of murder or manslaughter. The first part of this instruction was a re-

quest of defendant; the latter part, in reference to the killing by reason of riding with the daughter of the defendant, was added by the court. It is insisted there is no evidence to sustain this latter part. As there were no eyewitnesses to the actual homicide except the participants, there is no direct evidence that the killing was for the reason mentioned in the latter part of the instruction, but this is the theory of the state and the circumstantial evidence tends to prove it. It could not be prejudicial.

No other assignment requires special discussion. On the whole record, we are satisfied defendant had a fair trial.

The case is affirmed.

DAVENPORT, P. J., and CHAPPELL, J., concur.